**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

PAULA PARK MCCLINTOCK,            )
                                  )
        Plaintiff,            )
                                  )
v.                                )   Case No. CIV-16-136-KEW
                                  )
EXXONMOBIL OIL CORPORATION;       )
and ENTERPRISE CRUDE OIL, LLC,    )
                                  )
        Defendants.           )

**OPINION AND ORDER**

This matter comes before the Court on Defendant Enterprise Crude Oil, LLC's Motion to Dismiss Plaintiff's Fraud Claim (Docket Entry #57). Plaintiff initiated this action on April 13, 2016 in the District Court in and for Marshall County, Oklahoma. Defendant removed the case to this Court on April 1, 2016.

Plaintiff alleges she is the owner of certain oil and gas wells in Oklahoma. Defendant ExxonMobil Oil Corp. is identified as the producing owner/operator of oil and gas wells in Oklahoma which is obligated to pay oil and gas proceeds to Plaintiff. Defendant Enterprise Crude Oil, LLC ("Enterprise") is a first purchaser of production from oil and gas wells in Oklahoma which is also alleged to be obligated to pay Plaintiff oil and gas proceeds. Plaintiff contends Defendants were legally obligated to pay interest on untimely payments to royalty owners, including Plaintiff. Specifically, the First Amended Complaint defines the term "Owner" as "persons with a legal interest in the acreage under a well which

entitles such person(s) . . . to payments of O&G Proceeds." (First Amended Complaint ("FAC") at ¶1). She also alleges that he is an "Owner". (FAC at ¶¶2-3). The First Amended Complaint further defines "Untimely Payments" as "'proceeds from the sale of oil and gas production or some portion of such proceeds [that] are not paid prior to the end of the applicable time periods provided' by statute", citing to Okla. Stat. tit. 52 § 570.10(D) and Okla. Stat. tit. 52 § 570, *et seq.* (FAC ¶5). Plaintiff alleges that the Production Revenue Standards Act (the "Act") requires the payment of interest on any Untimely Payments made to Owners. (FAC ¶6). Plaintiff contends Defendants "are well aware of their obligations to pay the required interest on Untimely Payments" but "routinely delay payment of production proceeds and deny Owners the interest payments to which they are entitled as part of an overarching scheme to avoid its obligations under Oklahoma law." (FAC ¶7).

After alleging the personal basis for her claims, Plaintiff asserts she brings the action as a representative of a class defined as

> All non-excluded persons or entities who: (1) received Untimely Payments from Defendants (or Defendants' designees) for O&G Proceeds from Oklahoma Wells; and (2) whose payments did not include statutory interest.
>
> The persons or entities excluded from the Class are: (1) agencies, departments, or instrumentalities of the United States of America or the State of Oklahoma; (2) publicly traded oil and gas companies and their affiliates; (3) persons or entities that Plaintiff's counsel may be

prohibited from representing under Rule 1.7 of the Oklahoma Rules of Professional Conduct; and (4) officers of the court.

(FAC ¶23).

Plaintiff proceeds through the analysis required for class certification, alleging the facts which she asserts warrants certification. She also sets forth his qualification as a representative of the class. (FAC ¶¶24-30). Plaintiff reiterates that she and the putative class members were entitled to oil and gas proceeds from Defendants, the historical purpose for the Oklahoma statute under which she proceeds, that payments of the proceeds were untimely, and Defendants failed to pay the statutorily provided interest as a result of the delay in payment of the oil and gas proceeds. (FAC ¶¶31-43).

In her first cause of action, Plaintiff contends Defendant "held O&G Proceeds belonging to Plaintiff and the Class and Defendants failed to timely pay O&G Proceeds owing to Plaintiff and the Class" and "[i]n violation of the Act, when Defendants ultimately made its (sic) Untimely Payments to Plaintiff and the Class, Defendants did not pay the interest owing on the Untimely Payments." (FAC ¶¶50-51). Plaintiff concludes on this claim that Defendants' failure to pay the due and owing interest on the Untimely Payments was "knowing and intentional and/or the result of Defendant's gross negligence" which resulted in harm to Plaintiff

and the putative class. (FAC ¶¶52-53).

Plaintiff also asserts a claim for fraud, alleging Defendants owned and/or operated numerous oil and gas wells throughout Oklahoma and assumed the duties associated with the operation of the wells, including the duty to pay oil and gas proceeds to Owners in accordance with Oklahoma law. (FAC ¶56-57). In the course of doing so, Plaintiff alleges Defendants "took on such duties with the intent to deceive Owners and not pay the full O&G Proceeds owed" – specifically, the interest on Untimely Payments. Plaintiff states Defendants "knowingly and intentionally suppressed the fact that interest was owed to Plaintiff and the Class members" and "intended to avoid their obligation to pay the statutorily mandated interest and only pay when an Owner specifically requests payment of the statutory interest." (FAC ¶58). Plaintiff states that she and the putative class "relied on and trusted Defendants to pay them the full O&G Proceeds to which they were entitled under Oklahoma law" and alleges they were damaged as a result. (FAC ¶¶59-60). Plaintiff also asserts a claim for punitive damages under this fraud allegation. (FAC ¶61).

As a separately set out claim, Plaintiff seeks equitable relief in the form of an accounting and requests an order directing Defendants "to disgorge themselves of any benefits derived from their improper and unlawful use of Plaintiff's and the Class'

4

interest payments, including interest that has accrued on such interest since the time in which Defendants made the Disputed Payments to Plaintiff and the Class. (FAC ¶¶63-67).

Plaintiff also asserts a claim for injunctive relief, requesting "a permanent injunction, ordering Defendants to pay interest as required by law when Defendants make future Untimely Payments to Plaintiff, the Class, and Owners." (FAC ¶¶69-73).

Enterprise requests dismissal of Plaintiff's common law fraud claim contending (1) that the Energy Litigation Reform Act (the "Reform Act") specifically precludes Plaintiff from pursuing the fraud claim through its "exclusive remedy" language; and (2) that, should the fraud claim be permitted to proceed, Plaintiff's allegations in the First Amended Complaint do not rise to the level of actionable fraud under Oklahoma law.[1]

The Reform Act provides

> Except for the right to enforce lien rights under private agreement or under Sections 548 through 549.12 of Title 52 of the Oklahoma Statutes and except where specific remedies are provided by private agreement, and as long as paragraph 1 of subsection D of Section 570.10 of Title 52 of the Oklahoma Statutes provides for an interest rate equal to or greater than twelve percent (12%) compounded annually, **the Production Revenue Standards Act shall provide the exclusive remedy to a person entitled to**

---

[1] Plaintiff first responds that United States District Judge James Payne has already ruled upon this issue in a similar case. However, the ruling was contained in a minute order without explanation. Without more, this Court cannot give the Order preclusive effect in this action and, at the same time, give Enterprise's arguments fair consideration.

5

**proceeds from production for failure of a holder to pay the proceeds within the time periods required for payment.** The interest amounts set forth in subsection D of Section 570.10 and the remedies set forth in subsection C of Section 570.14 of Title 52 of the Oklahoma Statutes, with the term "actual damages" as used therein being limited to the proceeds due and the interest as provided in subsection D of Section 570.10 of Title 52 of the Oklahoma Statutes, are deemed to be adequate remedies for failure to pay proceeds within the time periods required for payment and no other penalty or damages shall be recoverable in any litigation involving a claim for unpaid or underpaid proceeds from production including, without limitation, punitive or exemplary damages or disgorgement damages, **unless there shall be a determination by the finder of fact upon clear and convincing evidence that the holder who failed to pay such proceeds did so with the actual, knowing and willful intent: (a) to deceive the person to whom the proceeds were due, or (b) to deprive proceeds from the person the holder knows, or is aware, is legally entitled thereto**.

Okla. Stat. Ann. tit. 52, § 903.

Enterprise contends this provision restricts the availability of other claims for relief which Plaintiff might assert in this action. Specifically, Enterprise states that the Reform Act (1) restricts through its "exclusive remedy" language any owner who did not receive the payments and interest to which it was entitled to the remedies available under the Act and no other cause of action recognized under Oklahoma law; (2) restricts any such owner through its "adequate remedies" language to the "actual damages" designated under the Act and the Reform Act; and (3) allows punitive or disgorgement damages only in the event the required finding is made

6

by clear and convincing evidence of intentional and deceptive conduct by the operator. For her part, Plaintiff contends that if the showing of intent and deception is made as required by the Reform Act, she may pursue any other claim for relief available under Oklahoma law, including her common law fraud claim set forth in the First Amended Complaint.

A nearly complete dearth of case authority exists to interpret this provision of Oklahoma law. In interpreting a statute such as the Reform Act, the primary instruction from the Oklahoma Supreme Court is "do no harm." In quoting TRW/Reda Pump v. Brewington, 829 P.2d, 15 (Okla. 1992), the Oklahoma Supreme Court reiterated

> The primary goal of statutory construction is to ascertain and follow the intention of the Legislature. If a statute is plain and unambiguous and its meaning clear and no occasion exists for the application of rules of construction a statute will be accorded the meaning expressed by the language used. However, where a statute is ambiguous or its meaning uncertain it is to be given a reasonable construction, one that will avoid absurd consequences if this can be done without violating legislative intent. Further, the Legislature will not be presumed to have done a vain and useless act in the promulgation of a statute, nor will an inept or incorrect choice of words be applied or construed in a manner to defeat the real or obvious purpose of a legislative enactment.
>
> Wylie v. Chesser, 173 P.3d 64, 71 (Okla. 2007) quoting Brewington, 820 P.2d at 20.

The Court went further to admonish any court attempting to alter or add to the statutory language, by quoting Head v.

7

McCracken, 102 P.3d 670 (Okla. 2004):

> When a court is called on to interpret a statute, the court has no authority to rewrite the enactment merely because it does not comport with the court's view of prudent public policy. Also, the wisdom of choices made within the Legislature's law-making sphere are not our concern, because those choices—absent constitutional or other recognized infirmity—rightly lie within the legislative domain.

Id. quoting Head, 102 P.2d at 680.

It is clear and unambiguous that the legislature intended for the Act to be an "exclusive remedy" for those owners alleging a failure to pay oil and gas proceeds and those that allege a late payment of oil and gas proceeds. "Exclusive remedy" when employed in other contexts under Oklahoma law has been defined and interpreted as liability that is "exclusive and in place of all other liability . . . ." Price v. Howard, 236 P.3d 82, 87-88 (Okla. 2010)("The statutory language makes it clear that the Legislature intended that accidental injuries will fall within the confines of the Workers' Compensation Act and that an employer's liability for these injuries is exclusive under the Act."). This Court has no basis upon which to conclude that the Oklahoma Legislature intended any different interpretation in employing the same term within the Reform Act.

The Legislature, however, was also well within its authority to create exceptions to this exclusivity. Citing to the hyper-

inflated burden of proof of "clear and convincing evidence," the Legislature included an exception for other penalties or damages when a determination is made that the operator failed to pay oil and gas proceeds with "actual, knowing and willful intent" to deceive the person to whom the proceeds were due or to deprive that person when the operator knows the person's legal entitlement to the proceeds. While the statute references "punitive or exemplary damages or disgorgement damages", it specifically references non-exclusive language "including, without limitation . . . ." Okla. Stat. tit. 52 § 903. Clearly, the Legislature intended the burden to be high to enable an owner to bypass the exclusivity of the Act. Nevertheless, the exception is unequivocal.

Such an exception to the "exclusive remedy" provision under Oklahoma law is not without precedent. The Oklahoma Supreme Court fashioned an exception to the exclusivity of remedy under the Worker's Compensation laws in Oklahoma for intentional conduct on the part of an employer to cause injury or harm to an employee. *See* <u>Parret v. UNICCO Service Co.</u>, 127 P.3d 572, 574-75 (Okla. 2005). As a result, this Court concludes that Plaintiff may maintain her common law fraud claim and damages associated therewith only after a finder of fact has concluded by clear and convincing evidence that any alleged failure to pay the oil and gas proceeds by Defendants was done with "actual, knowing and willful

intent" "to deceive" Plaintiff or to deprive Plaintiff of proceeds they knew Plaintiff was "legally entitled thereto." Dismissal of the fraud claim is, therefore, not appropriate at this time.

Enterprise also contends that the allegations set forth in the First Amended Complaint does not represent actionable fraud under Oklahoma law.[2] Enterprise asserts that it had no duty to disclose whether an owner was entitled to interest under the Act. In connection with the common law fraud claim in the First Amended Complaint, Plaintiff contends Defendants "knowingly and intentionally took on the duties associated with such interests, including the duty to pay O&G Proceeds to Owners in accordance with Oklahoma law." This statutory duty is not necessarily one that an operator "takes on" but rather one that is thrust upon it by the statute itself. The First Amended Complaint continues,

> Defendants, however, took on such duties with the intent to deceive Owners and not pay the full O&G Proceeds owed. Specifically, Defendants knew they owed interest on Untimely Payments, but knowingly and intentionally suppressed the fact that interest was owed to Plaintiff and the Class members. Further, Defendants intended to avoid their obligation to pay the statutorily mandated interest and only pay when an Owner specifically requests payment of the statutory interest. . . . Plaintiff and the Class relied on and trusted Defendants to pay them the full O&G Proceeds to which they were entitled under Oklahoma law. . . . Plaintiff and the

---

[2] Enterprise expressly states that it does not challenge Plaintiff's fraud claim on the basis of implausibility at this time. *See* Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009); Khalik v. United Air Lines, 671 F.3d 1188, 1190-91 (10th Cir. 2012).

>Class have been damaged by Defendants' actions and violations of law.
>(FAC ¶58-60).

Enterprise states that the facts are legally insufficient to permit the continuation of the fraud claim. Actionable fraud under Oklahoma law requires "1) a false material misrepresentation, 2) made as a positive assertion which is either known to be false or is made recklessly without knowledge of the truth, 3) with the intention that it be acted upon, and 4) which is relied on by the other party to his (or her) own detriment." Bowman v. Presley, 212 P.3d 1210, 1218 (Okla. 2009). While the factual allegations of a false material misrepresentation are indeed sparse and somewhat tenuous as set forth in the First Amended Complaint, it is sufficient to give "defendant fair notice of what the . . . claim is and the grounds upon which it rests." Khalik, 671 F.3d at 1192 quoting Erickson v. Pardus, 551 U.S. 89, 93 (2007). Whether Plaintiff can demonstrate intentional and deceptive conduct, it has been alleged in sufficient, but albeit minimal, detail for Defendants to ascertain the basis for these elements. Reliance is alleged. As this Court concluded in similar case, "[G]iven the allegedly uneven positions of the parties with regard to the information upon which the claim of fraud is based, Plaintiff has

plead as particularly as the facts allow."[3] After considerable ferreting out of these facts in discovery, the disposition of the merits of the fraud claim is more appropriately relegated to a detailed and supported summary judgment motion.

IT IS THEREFORE ORDERED that Defendant Enterprise Crude Oil, LLC's Motion to Dismiss Plaintiff's Fraud Claim (Docket Entry #57) is hereby **DENIED**.

IT IS SO ORDERED this 29th day of March, 2018.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE

---

[3] Reirdon v. Cimarex Energy Co., CIV-16-113-KEW, Docket Entry No. 33, p. 8-9.